EXHIBIT A

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WEST CONTRA COSTA UNIFIED SCHOOL DISTRICT; COLLEEN BALLANTINE, an
individual; GREG WHALING, an individual, and DOES 1 through 100, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
ERNEST CASADOS, an individual; CRISANTHE GIANNAKIS, an individual; and
C_____ C_____ a minor, by and through his duly appointed guardian ad litem,
CRISANTHE GIANNAKIS.

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: Contra Costa<br>*(El nombre y dirección de la corte es):*<br>725 Court Street, Martinez, CA 94553 | CASE NUMBER:<br>*(Número del Caso):* C22-01733 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Jason O Balogh, 238199          (925) 575-8056
Balogh Law, 6680 Alhambra Ave, Suite 101, Martinez, CA 94553; jason@baloghlaw.com

| DATE: | Clerk, by | , Deputy |
|---|---|---|
| *(Fecha)* | *(Secretario)* | *(Adjunto)* |

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**RECEIVED**

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.

2. ☐ as the person sued under the fictitious name of *(specify):*

**NOV 2 3 2022**

3. ☒ on behalf of *(specify):* West Contra Costa Unified School District

**SUPERINTENDENT**

under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
☒ other *(specify):* CCP 416.50 (Public Entity)

4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Jason O Balogh, 238199
Balogh Law, 6680 Alhambra Ave, Suite 101, Martinez, CA 94553

TELEPHONE NO.: (925) 575-8056          FAX NO. *(Optional):*
E-MAIL ADDRESS: jason@baloghlaw.com
ATTORNEY FOR *(Name):* Ernest Casados, Crisanthe Giannakis, et al.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** Contra Costa
STREET ADDRESS: 725 Court Street
MAILING ADDRESS:
CITY AND ZIP CODE: Martinez 94553
BRANCH NAME: Wakefield Taylor Courthouse

CASE NAME:
Crisanthe Giannakis, et al. vs. West Contra Costa Unified School District, et al.

FOR COURT USE ONLY

| **CIVIL CASE COVER SHEET** | **Complex Case Designation** | CASE NUMBER: C22-01733 |
|---|---|---|
| ☑ **Unlimited** ☐ **Limited** (Amount demanded exceeds $25,000) (Amount demanded is $25,000 or less) | ☐ Counter ☐ Joinder Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: DEPT.: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
☐ Auto (22)
☐ Uninsured motorist (46)
**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
☐ Asbestos (04)
☐ Product liability (24)
☐ Medical malpractice (45)
☑ Other PI/PD/WD (23)
**Non-PI/PD/WD (Other) Tort**
☐ Business tort/unfair business practice (07)
☐ Civil rights (08)
☐ Defamation (13)
☐ Fraud (16)
☐ Intellectual property (19)
☐ Professional negligence (25)
☐ Other non-PI/PD/WD tort (35)
**Employment**
☐ Wrongful termination (36)
☐ Other employment (15)

**Contract**
☐ Breach of contract/warranty (06)
☐ Rule 3.740 collections (09)
☐ Other collections (09)
☐ Insurance coverage (18)
☐ Other contract (37)
**Real Property**
☐ Eminent domain/Inverse condemnation (14)
☐ Wrongful eviction (33)
☐ Other real property (26)
**Unlawful Detainer**
☐ Commercial (31)
☐ Residential (32)
☐ Drugs (38)
**Judicial Review**
☐ Asset forfeiture (05)
☐ Petition re: arbitration award (11)
☐ Writ of mandate (02)
☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
☐ Antitrust/Trade regulation (03)
☐ Construction defect (10)
☐ Mass tort (40)
☐ Securities litigation (28)
☐ Environmental/Toxic tort (30)
☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)
**Enforcement of Judgment**
☐ Enforcement of judgment (20)
**Miscellaneous Civil Complaint**
☐ RICO (27)
☐ Other complaint *(not specified above)* (42)
**Miscellaneous Civil Petition**
☐ Partnership and corporate governance (21)
☐ Other petition *(not specified above)* (43)

2. This case ☐ is ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties       d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve       e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence       f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ☑ monetary  b. ☐ nonmonetary; declaratory or injunctive relief  c. ☑ punitive
4. Number of causes of action *(specify):* 11
5. This case ☐ is ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related cases. *(You may use form CM-015.)*
Date: 8/3/22

Jason O Balogh
_____
(TYPE OR PRINT NAME)                                     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10

**INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET**                                                    CM-010

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the Civil Case Cover Sheet contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the Civil Case Cover Sheet to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

**CASE TYPES AND EXAMPLES**

**Auto Tort**
  Auto (22)–Personal Injury/Property
    Damage/Wrongful Death
  Uninsured Motorist (46) *(if the
    case involves an uninsured
    motorist claim subject to
    arbitration, check this item
    instead of Auto)*

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
  Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/
      Wrongful Death
  Product Liability *(not asbestos or
    toxic/environmental)* (24)
  Medical Malpractice (45)
    Medical Malpractice–
      Physicians & Surgeons
    Other Professional Health Care
      Malpractice
  Other PI/PD/WD (23)
    Premises Liability (e.g., slip
      and fall)
    Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
    Intentional Infliction of
      Emotional Distress
    Negligent Infliction of
      Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
  Business Tort/Unfair Business
    Practice (07)
  Civil Rights (e.g., discrimination,
    false arrest) *(not civil
    harassment)* (08)
  Defamation (e.g., slander, libel)
    (13)
  Fraud (16)
  Intellectual Property (19)
  Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice
      *(not medical or legal)*
  Other Non-PI/PD/WD Tort (35)

**Employment**
  Wrongful Termination (36)
  Other Employment (15)

**Contract**
  Breach of Contract/Warranty (06)
    Breach of Rental/Lease
      Contract *(not unlawful detainer
        or wrongful eviction)*
    Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/
      Warranty
    Other Breach of Contract/Warranty
  Collections (e.g., money owed, open
    book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections
      Case
  Insurance Coverage *(not provisionally
    complex)* (18)
    Auto Subrogation
    Other Coverage
  Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
  Eminent Domain/Inverse
    Condemnation (14)
  Wrongful Eviction (33)
  Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent
      domain, landlord/tenant, or
      foreclosure)*

**Unlawful Detainer**
  Commercial (31)
  Residential (32)
  Drugs (38) *(if the case involves illegal
    drugs, check this item; otherwise,
    report as Commercial or Residential)*

**Judicial Review**
  Asset Forfeiture (05)
  Petition Re: Arbitration Award (11)
  Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court
      Case Matter
    Writ–Other Limited Court Case
      Review
  Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
  Antitrust/Trade Regulation (03)
  Construction Defect (10)
  Claims Involving Mass Tort (40)
  Securities Litigation (28)
  Environmental/Toxic Tort (30)
  Insurance Coverage Claims
    *(arising from provisionally complex
    case type listed above)* (41)

**Enforcement of Judgment**
  Enforcement of Judgment (20)
    Abstract of Judgment (Out of
      County)
    Confession of Judgment *(non-
      domestic relations)*
    Sister State Judgment
    Administrative Agency Award
      *(not unpaid taxes)*
    Petition/Certification of Entry of
      Judgment on Unpaid Taxes
    Other Enforcement of Judgment
      Case

**Miscellaneous Civil Complaint**
  RICO (27)
  Other Complaint *(not specified
    above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-
      harassment)*
    Mechanics Lien
    Other Commercial Complaint
      Case *(non-tort/non-complex)*
    Other Civil Complaint
      *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
  Partnership and Corporate
    Governance (21)
  Other Petition *(not specified
    above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult
      Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late
      Claim
    Other Civil Petition

1   Jason O. Balogh (SBN 238199)
2   jason@baloghlaw.com
    Rene M. Kahn (SBN 201508)
3   rene@baloghlaw.com
    BALOGH LAW
4   6680 Alhambra Ave., Suite 101
    Martinez, CA 94553                      Per local Rule, This case is assigned to
5   Telephone/Fax: (925) 575-8056           Judge Douglas, Danielle K, for all purposes.

6   Attorneys for Plaintiffs
    Crisanthe Giannakis, C█████ C█████
7   and Ernest Casados

8
                       SUPERIOR COURT OF CALIFORNIA
9
                IN AND FOR THE COUNTY OF CONTRA COSTA
10

11   ERNEST CASADOS, an individual;             Case No.    C22-01733
     CRISANTHE GIANNAKIS, an individual;
12   and C█████ C█████, a minor, by and         **COMPLAINT FOR:**
     through his duly appointed guardian *ad litem*,
13   CRISANTHE GIANNAKIS.
                                                1. **ASSAULT**
14   Plaintiffs,                                2. **BATTERY**
                                                3. **INTENTIONAL INFLICTION OF**
15   vs.                                           **EMOTIONAL DISTRESS**
                                                4. **NEGLIGENCE**
16   WEST CONTRA COSTA UNIFIED SCHOOL           5. **AMERICANS WITH DISABILITIES**
     DISTRICT; COLLEEN BALLANTINE, an              **ACT (42 U.S.C. § 12132)**
17   individual; GREG WHALING, an individual,   6. **REHABILITATION ACT (29 U.S.C. §**
     and DOES 1 through 100, inclusive,            **794)**
18                                              7. **CAL. GOVT. C. 11135**
     Defendants.                                8. **CAL. EDUC. C. 220**
19                                              9. **UNRUH ACT**
                                                10. **BANE ACT**
20                                              11. **RALPH ACT**

21

22

23

24        GENERAL ALLEGATIONS APPLICABLE TO ALL CAUSES OF ACTION

25        1.   Plaintiffs ERNEST CASADOS, CRISANTHE GIANNAKIS, and C█████

26   C█████, by and through his duly appointed guardian *ad litem*, CRISANTHE GIANNAKIS

27   (collectively, "Plaintiffs"), bring this lawsuit against Defendants WEST CONTRA COSTA UNIFIED

28

                                              1
                                        **COMPLAINT**

SCHOOL DISTRICT, COLLEEN BALLANTINE ("BALLANTINE") and GREG WHALING ("WHALING") (hereinafter, collectively, "Defendants").

2.    Plaintiffs are individuals who are now, and at all times mentioned in this complaint were, residents of Contra Costa County, California.

3.    Plaintiff C███████ C█████ ("C███████") is a minor whose date of birth is January 10, 2016. C███████ is 6-year-old individual who attended Ellehorst Elementary School, 3501 Pinole Valley Rd, Pinole, CA 94564 ("ELLEHORST") within the West Contra Costa Unified School District ("DISTRICT") from approximately August 17, 2021 to September 23, 2021.

4.    Plaintiff ERNEST CASADOS ("CASADOS") is C███████'s father.

5.    Plaintiff CRISANTHE GIANNAKIS ("GIANNAKIS") is C███████'s mother and the duly appointed guardian *ad litem* for C███████

6.    Defendant DISTRICT, is now, and at all times mentioned in this complaint was, a government owned organization, licensed to do business and doing business in Contra Costa County.

7.    Defendant BALLANTINE is now, and at all times mentioned in this complaint, a teacher at ELLEHORST and employed by Defendant DISTRICT.

8.    Defendant WHALING is now, and at all times mentioned in this complaint, the principal at ELLEHORST and employed by Defendant DISTRICT.

9.    Plaintiffs are ignorant of the true names of Defendants, DOES 1 through 100, inclusive, and therefore sue them by these fictitious names. Plaintiffs will amend this complaint to include their names and capacities once they are known. Plaintiffs are informed and believe, and based on that information and belief allege, that each of the Defendants designated as a DOE is legally responsible in some manner for the occurrences alleged in this complaint, and unlawfully caused the injuries and damages to Plaintiffs as alleged in this complaint.

10.  At all times mentioned in this complaint, unless otherwise alleged, each Defendant was the agent, partner, or employee of every other Defendant, and in doing the acts alleged in this complaint, was acting within the course, scope, and authority of that agency, partnership, or employment, and with the knowledge and consent of each of the other Defendants.

11.  C███████ is autistic and attended the DISTRICT's Special Education program while at

1  ELLEHORST.

2      12.  In the short time C████ was in ELLEHORST, he was sent to the principal's office

3  every single day.

4      13.  On September 20, 2021 C████ was suspended from school and an Individual

5  Education Plan ("IEP") meeting was conducted on September 21, 2021 wherein C████'s

6  teacher, Defendant BALLANTINE, emphatically stated that C████ could not be in class.

7      14.  On or about September 22, 2021, while bathing C████, Plaintiff GIANNAKIS

8  noticed reddened skin around C████'s rib cage in the outlines of a hand.

9      15.  Ms. GIANNAKIS inquired of C████ where the injury occurred and provided him

10  with choices as to the source of the injury.

11     16.  From her inquiries, Ms. GIANNAKIS determined that C████ sustained the injury at

12  ELLEHORST, from his teacher, Defendant BALLANTINE.

13     17.  This was not the first time C████ returned from ELLEHORST bearing injuries.

14  Prior to September 22, 2021, C████ exited the school bus in tears and Mr. CASADOS observed

15  that C████'s neck was bruised and scratched. On another occasion, Ms. GIANNAKIS observed

16  an adult teaching assistant at ELLEHORST, whose identity is presently unknown, apply a bear hug

17  on another student and spin him around. On September 23, 2021, C████ was suspended again

18  and he never returned to ELLEHORST.

19     18.  Ms. GIANNAKIS and Mr. CASADOS brought these incidents and C████'s injuries

20  to the attention of Defendant WHALING, Principal at ELLEHORST.

21     19.  C████ has an Individual Education Program ("IEP") which contains a section

22  outlining the appropriate actions for ELLEHORST staff to take in response to C████'s problem

23  behavior.

24     20.  C████'s IEP was not implemented by the Defendant DISTRICT's employees at

25  ELLEHORST, where one teacher and three aides oversaw sixteen children in C████'s class.

26  Defendant DISTRICT's employees failed to comply with C████'s IEP when C████

27  exhibited problem behavior.  Defendant DISTRICT's employees, including but not limited to

28  Defendant BALLANTINE and her aides, instead resorted to excessive physicality due to the

3
**COMPLAINT**

1    disproportionate student to teacher ratio at ELLEHORST.

2        21. While at ELLEHORST, Defendant BALLANTINE openly ridiculed C███████'s high

3    pitched voice and, at one point, told C███████'s parent "Boy I bet you can't wait until his voice

4    matures hahaha".

5        22. BALLANTINE told the therapist at C███████'s present school that, while at

6    ELLEHORST, C███████ would eat paper clips. However, BALLANTINE never reported this

7    behavior to C███████'s parents.

8        23. C███████'s educational and psychological progress and development were

9    significantly hindered due to the distress, both mental and physical, that he experienced at the hands

10   of DISTRICT employees, including but not limited Defendant BALLANTINE and her aides, while at

11   ELLEHORST. C███████ now attends another school, away from Defendant BALLANTINE and

12   the ELLEHORST staff. C███████s new school observes his IEP and C███████ does not exhibit

13   problem behavior.

14        24. Plaintiff GIANNAKIS suffered mental and gastrointestinal distress, anxiety, and

15   insomnia as a result of the injuries she observed on C███████.

16        25. Plaintiff CASADOS suffered from severe mental and physical distress as a result of the

17   injuries he observed on C███████.

18                                    **JURISDICTION AND VENUE**

19        26. The amount in controversy exceeds the jurisdictional minimum of this Court. At all

20   times alleged herein, one or more Defendants were residents of, or were doing business in, the State

21   of California, County of Contra Costa.

22        27. Venue in this Court is proper pursuant to sections 395 and 395.5 of the Code of Civil

23   Procedure in that at all relevant times herein, one or more Defendants conducted substantial business

24   and/or committed violations of law in the County of Contra Costa.

25                                    **CLAIM PRESENTMENT**

26        28. On or about January 26, 2022, Plaintiffs, through undersigned counsel, submitted a claim

27   presentment letter to the DISTRICT, in accordance with Cal. Govt. C. 950.2.

28        29. As of the date of the filing of this Complaint, Defendants have not responded to the

1 | Plaintiff's claim presentment letter.  Accordingly, Plaintiffs have complied with the claim

2 | presentment requirement prior to filing suits against government entities.

3 | ### FIRST CAUSE OF ACTION

4 | ### ASSAULT

5 | ### (AGAINST ALL DEFENDANTS)

6 | 30.  Plaintiffs incorporate by reference Paragraphs 1 through 29, inclusive, as though set forth

7 | herein in full.

8 | 31.  While enrolled at ELLEHORST, C█████ had an IEP which contained a section

9 | outlining the appropriate actions for ELLEHORST staff to take in response to C█████'s problem

10 | behavior.  C█████'s IEP was not implemented by the Defendant DISTRICT employees at

11 | ELLEHORST, where one teacher and three aides oversaw sixteen children in C█████'s class.

12 | Rather than comply with C█████'s IEP, DISTRICT employees at ELLEHORST resorted to

13 | excessive physicality due to the disproportionate student to teacher ratio.

14 | 32.  While enrolled at ELLEHORST, C█████ reasonably believed that he was about to

15 | be touched in a harmful or offensive manner by employees of Defendant DISTRICT, including but

16 | not limited to Defendant BALLANTINE and DOES 1-20.  C█████ reasonably apprehended a

17 | harmful or offensive touching that was not in compliance with C█████'s IEP and exceeded what

18 | was necessary to address C█████'s problem behavior.

19 | 33.  C█████ did not consent to the afore-mentioned conduct of Defendant DISTRICT's

20 | employees, including but not limited to Defendant BALLANTINE and DOES 1-20.

21 | 34.  C█████ was harmed by the actions of Defendant DISTRICT employees, including

22 | but not limited to Defendant BALLANTINE and DOES 1-20.  C█████ was put in fear and

23 | apprehension of a harmful touching by the actions of Defendant DISTRICT's employees, including

24 | but not limited to Defendant BALLANTINE and DOES 1-20.

25 | 35.  The conduct of Defendant DISTRICT's employees, including Defendant BALLANTINE

26 | and DOES 1-20, was a substantial factor in causing C█████'s harm.  Such actions by Defendants

27 | caused C█████ to reasonably apprehend a harmful or offensive touching that was not in

28 |

1  compliance with C███████'s IEP and exceeded what was necessary to address C████████'s

2  problem behavior.

3       36.  As a further direct and proximate result of the unlawful actions committed by Defendants

4  as described herein, Plaintiff███████ has suffered and will continue to suffer emotional distress

5  including but not limited to humiliation, embarrassment, mental anguish, loss of enjoyment of life, all

6  in an amount to be proven at trial.

7       37.  Defendant BALLANTINE's actions in causing C██████ to reasonably apprehend an

8  unconsented, harmful touching was done intentionally, thereby entitling C█████ to punitive

9  damages against Defendant BALLANTINE under Civ. C. 3294. (*Austin v. Regents of University of*

10  *California* (1979) 89 Cal.App.3d 354; *Runyon v. Superior Court* (1986) 187 Cal. App. 3d 878.)

11       38.  WHEREFORE, Plaintiffs request that judgment be entered in their favor and against

12  Defendants as set forth herein.

13                           **SECOND CAUSE OF ACTION**

14                                **BATTERY**

15                        **(AGAINST ALL DEFENDANTS)**

16       39.  Plaintiffs incorporate by reference Paragraphs 1 through 38, inclusive, as though set forth

17  herein in full.

18       40.  While enrolled at ELLEHORST, C██████ had an IEP which contained a section

19  outlining the appropriate actions for ELLEHORST staff to take in response to C████████'s problem

20  behavior. C█████'s IEP was not implemented by the DISTRICT employees at ELLEHORST,

21  where one teacher and three aides oversaw sixteen children in C██████s class.  Rather than

22  comply with C████████'s IEP, DISTRICT employees at ELLEHORST resorted to excessive

23  physicality due to the disproportionate student to teacher ratio.

24       41.  Employees of Defendant DISTRICT, including but not limited to Defendant

25  BALLANTINE and DOES 1-20, touched C████████ or caused C████████ to be touched, with the

26  intent to harm or offend C█████.

27       42.  Defendants touched C██████ with the intent to harm him because such touching was

28  not in compliance with C███████'s IEP and exceeded what was necessary to address C████████s

1   problem behavior.

2       43.   C█████ did not consent to the touching by Defendant DISTRICT's employees,

3   including but not limited to Defendant BALLANTINE and DOES 1-20.

4       44.   C█████ was harmed by the conduct of employees of Defendant DISTRICT's

5   employees, including but not limited to Defendant BALLANTINE and DOES 1-20, because it was

6   not in compliance with C█████'s IEP and exceeded what was necessary to address C█████'s

7   problem behavior.

8       45.   On or about September 22, 2021, while bathing C█████, Ms. GIANNAKIS noticed

9   reddened skin around C█████'s rib cage in the outlines of a hand.

10      46.   Ms. GIANNAKIS inquired of C█████ where the injury occurred and provided him

11  with choices as to the source of the injury.

12      47.   From her inquiries, Ms. GIANNAKIS determined that C█████ sustained the injury at

13  ELLEHORST, from his teacher, Defendant BALLANTINE.

14      48.   This was not the first time C█████ returned from school bearing injuries. Prior to

15  September 22, 2021, C█████ exited the school bus in tears and Mr. CASADOS observed that

16  C█████'s neck was bruised and scratched. On another occasion, Ms. GIANNAKIS observed an

17  adult teaching assistant at ELLEHORST, whose identity is presently unknown, apply a bear hug on

18  another student and spin him around. On September 23, 2021, C█████ was suspended again and

19  he never returned to ELLEHORST.

20      49.   Ms. GIANNAKIS and Mr. CASADOS brought these incidents and C█████'s injuries

21  to the attention of Defendant WHALING, Principal at ELLEHORST. C█████ was sent to the

22  principal's office every day that he attended school at ELLEHORST. Thus, DISTRICT employees,

23  including Defendant WHALING, with knowledge of C█████'s problem behavior, failed to

24  observe his IEP, resorting instead to excessive physicality to address C█████'s problem

25  behavior.

26      50.   A reasonable person in C█████'s situation would have been offended by the

27  touching that C█████ endured at the hands of Defendant DISTRICT's employees, including but

28  not limited to Defendant BALLANTINE and DOES 1-20. Such touching was not in compliance with

1    C███████'s IEP and exceeded what was necessary to address C███████'s problem behavior.

2    51.   As a further direct and proximate result of the unlawful actions committed by Defendants

3    as described herein, Plaintiff C███████ has suffered and will continue to suffer emotional distress

4    including but not limited to humiliation, embarrassment, mental anguish, loss of enjoyment of life, all

5    in an amount to be proven at trial.

6    52.   Defendant BALLANTINE's touching of C███████ was done intentionally, thereby

7    entitling C███████ to punitive damages against Defendant BALLANTINE under Civ. C. 3294.

8    (*Austin v. Regents of University of California* (1979) 89 Cal.App.3d 354; *Runyon v. Superior Court*

9    (1986) 187 Cal. App. 3d 878.)

10   53.   WHEREFORE, Plaintiffs demands judgment from Defendants as set forth below.

11                              **THIRD CAUSE OF ACTION**

12              **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

13                         **(AGAINST ALL DEFENDANTS)**

14   54.   Plaintiffs incorporate by reference Paragraphs 1 through 53, inclusive, as though set forth

15   herein in full.

16   55.   While enrolled at ELLEHORST, C███████ had an IEP which contained a section

17   outlining the appropriate actions for ELLEHORST staff to take in response to C███████'s problem

18   behavior.  C███████'s IEP was not implemented by the DISTRICT employees at ELLEHORST,

19   where one teacher and three aides oversaw sixteen children in C███████'s class.  Rather than

20   comply with C███████'s IEP, DISTRICT employees at ELLEHORST resorted to excessive

21   physicality due to the disproportionate student to teacher ratio.

22   56.   The actions of Defendant DISTRICT's employees, including but not limited to Defendant

23   BALLANTINE and DOES 1-20 was outrageous.  Defendants' conduct in committing an assault and

24   battery upon C███████, as evidenced by physical injuries on C███████'s body, exceeds all

25   bounds of that usually tolerated in civilized society.

26   57.   Defendant DISTRICT's employees, including but not limited to Defendant

27   BALLANTINE and DOES 1-20, intended to cause C███████ emotional distress.

28   58.   On September 20, 2021 C███████ was suspended from school and an IEP meeting was

8
**COMPLAINT**

1  conducted on September 21, 2021 wherein C███████'s teacher, Defendant BALLANTINE,

2  emphatically stated that C███████ could not be in class.

3      59. On or about September 22, 2021, while bathing C███████, Ms. GIANNAKIS noticed

4  reddened skin around C███████'s rib cage in the outlines of a hand.

5      60. Ms. GIANNAKIS inquired of C███████ where the injury occurred and provided him

6  with choices as to the source of the injury.

7      61. From her inquiries, Ms. GIANNAKIS determined that C███████ sustained the injury at

8  ELLEHORST, from his teacher, Defendant BALLANTINE.

9      62. This was not the first time CA███████ returned from school bearing injuries. Prior to

10  September 22, 2021, C███████ exited the school bus in tears and Mr. CASADOS observed that

11  CARMELO's neck was bruised and scratched. On another occasion, Ms. GIANNAKIS observed an

12  adult teaching assistant at ELLEHORST, whose identity is presently unknown, apply a bear hug on

13  another student and spin him around. On September 23, 2021, C███████ was suspended again and

14  he never returned to ELLEHORST.

15      63. Ms. GIANNAKIS and Mr. CASADOS brought these incidents and C███████'s injuries

16  to the attention of Defendant WHALING, Principal at ELLEHORST. C███████ was sent to the

17  principal's office every day that he attended school at ELLEHORST.

18      64. DISTRICT employees, including Defendant WHALING, were aware of C███████'s

19  IEP and the actions to take when C███████ exhibited problem behavior.

20      65. DISTRICT employees ignored C███████'s IEP with the intent of, or reckless disregard

21  for, causing C███████ severe emotional distress. The actions taken by the Defendant DISTRICT's

22  employees, including but not limited to Defendant BALLANTINE and DOES 1-20, were not in

23  compliance with C███████'s IEP and exceeded what was necessary to address C███████'s

24  problem behavior.

25      66. CA███████ suffered severe emotional distress. C███████'s educational and

26  psychological progress and development were significantly hindered due to the distress, both mental

27  and physical, that he experienced at the hands of DISTRICT employees, including but not limited

28  Defendant BALLANTINE and her aides, while at ELLEHORST.

1        67. The conduct of Defendant DISTRICT's employees, including but not limited to

2    Defendant BALLANTINE and DOES 1-20, was a substantial factor in causing C▮▮▮▮▮'s severe

3    emotional distress.

4        68. Defendant BALLANTINE intentionally caused C▮▮▮▮▮ to suffer severe emotional

5    distress, thereby entitling C▮▮▮▮▮ to punitive damages against Defendant BALLANTINE under

6    Civ. C. 3294. (*Austin v. Regents of University of California* (1979) 89 Cal.App.3d 354; *Runyon v.*

7    *Superior Court* (1986) 187 Cal. App. 3d 878.)

8        69. WHEREFORE, Plaintiffs demand judgment from all Defendants as set forth below.

9    **FOURTH CAUSE OF ACTION**

10   **NEGLIGENCE**

11   **(AGAINST ALL DEFENDANTS)**

12       70. Plaintiffs incorporate by reference Paragraphs 1 through 69, inclusive, as though set forth

13   herein in full.

14       71. Defendant DISTRICT and its employees, including Defendants BALLANTINE,

15   WHALING and DOES 1-20, owed a duty of reasonable care to Plaintiff C▮▮▮▮▮ as a student.

16       72. Defendants owed C▮▮▮▮▮ a duty of reasonable care to follow the procedures set forth

17   in the IEP on the appropriate actions for ELLEHORST staff to take in response to CARMELO's

18   problem behavior.

19       73. Principal WHALING, and other DISTRICT employees, were negligent in failing to

20   ensure that C▮▮▮▮▮'s IEP was observed and implemented by DISTRICT employees, including

21   Defendant BALLANTINE and her aides, at ELLEHORST.

22       74. Principal WHALING and other DISTRICT employees breached a duty of reasonable

23   care to ensure that ELLEHORST students like C▮▮▮▮▮ were not harmed by DISTRICT

24   employees at ELLEHORST who, rather than comply with C▮▮▮▮▮'s IEP, resorted to excessive

25   physicality due to the disproportionate student to teacher ratio in C▮▮▮▮▮'s class at

26   ELLEHORST.

27       75. C▮▮▮▮▮'s IEP was not implemented by the DISTRICT employees at ELLEHORST,

28   where one teacher and three aides oversaw sixteen children in C▮▮▮▮▮'s class.

10
**COMPLAINT**

76. C███████ was sent to the principal's office every day that he attended ELLEHORST. Thus, DISTRICT employees, including Defendant WHALING, knew of C███████'s problem behavior yet failed to observe his IEP, resorting instead to excessive physicality to address C███████'s problem behavior.

77. While C███████ attended ELLEHORST, Defendant BALLANTINE openly ridiculed C███████'s high pitched voice and, at one point, told C███████'s parent "Boy I bet you can't wait until his voice matures hahaha", breaching a duty of reasonable care to her student C███████ and, as more fully set forth below, to C███████'s parents.

78. BALLANTINE told the therapist at C███████'s present school that, while at ELLEHORST, C███████ would eat paper clips. However, BALLANTINE never reported this behavior to C███████'s parents, breaching a duty of reasonable care to her student C███████ and, as more fully set forth below, to C███████'s parents.

79. As a direct and proximate cause of Defendants' breach of their duty of care, C███████ sustained physical injury, severe mental distress and damages as more particularly set forth herein.

80. C███████ now attends another school where his IEP is observed and he does not exhibit problem behavior.

81. Defendant DISTRICT and its employees owed Plaintiffs GIANNAKIS and CASADOS a duty of care arising from the relationship between a school and the parents of its students.

82. Plaintiffs GIANNAKIS and CASADOS entrusted their son, C███████, to the care of the Defendant DISTRICT's employees. Defendant DISTRICT could reasonably foresee the risk of harm to Plaintiffs GIANNAKIS and CASADOS if their minor son, C███████, were physically injured as a result of the failure by Defendant DISTRICT employees to comply with C███████'s IEP and, instead, resort to excessive physicality in response to C███████'s problem behavior.

83. Defendants breached their duty of care to Plaintiffs GIANNAKIS and CASADOS by failing to comply with the IEP in response to C███████'s problem behavior and resorting instead to excessive physicality, resulting in injuries to C███████.

84. As a direct and proximate result of the Defendants' breach of their duty of care, Plaintiff GIANNAKIS suffered mental and gastrointestinal distress, anxiety, and insomnia as a result of the

1    injuries she observed on C███████

2         85.  As a direct and proximate result of the Defendants' breach of their duty of care, Plaintiff

3    CASADOS suffered from severe mental and physical distress as a result of the injuries he observed

4    on C██████.

5         86.  The afore-mentioned actions of Defendants BALLANTINE and WHALING evidence a

6    conscious and callous disregard of a substantial likelihood of injury to others and entitles Plaintiffs to

7    punitive damages under Civ. C. 3294 for the actions of Defendants BALLANTINE and WHALING.

8    (*Austin v. Regents of University of California* (1979) 89 Cal.App.3d 354; *Runyon v. Superior Court*

9    (1986) 187 Cal. App. 3d 878.)

10        87.  WHEREFORE, Plaintiffs request that judgment be entered in their favor and against

11   Defendants as set forth herein.

12                              **FIFTH CAUSE OF ACTION**

13                    **AMERICANS WITH DISABILITIES ACT VIOLATION**

14                              **(AGAINST ALL DEFENDANTS)**

15        88.  Plaintiffs incorporate by reference Paragraphs 1 through 87, inclusive, as though set forth

16   herein in full.

17        89.  Section 202 of the Americans with Disabilities Act ("ADA") provides that: "No qualified

18   individual with a disability shall, by reason of such disability, be excluded from participation in or be

     denied the benefits of the services, programs, or activities of a public entity, or be subjected to

19   discrimination by any such entity." 42 U.S.C. § 12132.

20        90.  CARMELO is a qualified individual with a disability. C███████ is a minor child,

21   autistic and resides within the DISTRICT.

22        91.  C████████ was excluded from participating in the special education program at

23   ELLEHORST by reason of his autism and related behavioral issues arising therefrom.

24        92.  C█████████ had an IEP while he attended ELLEHORST. C████████'s IEP set forth the

     actions to take in the event C████████'s autism gave rise to behavioral issues.

25        93.  DISTRICT employees at ELLEHORST did not follow C████████'s IEP when

26   C████████'s autism gave rise to behavioral issues. Instead, BALLANTINE and other DISTRICT

27   employees at ELLEHORST resorted to the application of unreasonable and excessive physical force

28   upon C████████ in response to C████████'s autism related behavioral issues.

94. BALLANTINE, during an IEP meeting with C███████'s parents, stated that C███████ could not be in class due to his autism related behavioral issues.

95. C███████ was sent to the principal's office daily while he attended ELLEHORST and was suspended on multiple occasions on account of his autism related behavioral issues.

96. C███████ sustained physical injuries due to the use of force upon him by BALLANTINE and other DISTRICT employees at ELLEHORST. As such, C███████ was excluded from participating in the DISTRICT's education program at ELLEHORST and denied the benefits of such program.

97. Rather than offering meaningful and appropriate behavior accommodations and allowing C███████ to attend school for the same amount of time as his peers, the DISTRICT discriminated against C███████ on the basis of his disability by excluding him from ELLEHORST by sending him to the principal's office every day and suspending him on account of his autism related behavioral issues, refusing to follow C███████'s IEP with respect to his autism related behavioral issues and subjecting him to an unsafe school environment.

98. The conduct of DISTRICT and its employees, including WHALING, BALLANTINE and DOES 1-20, exhibited their deliberate indifference to C███████'s statutorily protected right to full and equal access to education. Defendants deliberately ignored the protocols outlined in C███████'s IEP when responding to his autism related problem behavior and resorted instead to excessive and unreasonable force and excluding him from class.

99. Plaintiffs have incurred special and general damages as a result of Defendants' actions, as more particularly described above. In addition, Plaintiffs incurred attorneys' fees and costs in bringing this action.

100. WHEREFORE, Plaintiffs demand judgment from all Defendants as set forth below.

## SIXTH CAUSE OF ACTION

## VIOLATION OF REHABILITATION ACT

## (AGAINST ALL DEFENDANTS)

101. Plaintiffs incorporate by reference Paragraphs 1 through 100, inclusive, as though set forth herein in full.

102. The federal Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794 ("Rehabilitation Act")

103. C███████ is a disabled person under the Rehabilitation Act by virtue of his autism. C███████ met the essential eligibility requirements to attend ELLEHORST's special education program. C███████ was excluded from the ELLEHORST special education program solely by reason of his disability, as more particularly set forth above.

104. Rather than offering meaningful and appropriate behavior accommodations and allowing C███████ to attend school for the same amount of time as his peers, the DISTRICT discriminated against C███████ on the basis of his disability by excluding him from ELLEHORST by sending him to the principal's office every day and suspending him on account of his autism related behavioral issues, refusing to follow C███████'s IEP with respect to his autism related behavioral issues and subjecting him to an unsafe school environment.

105. The conduct of DISTRICT and its employees, including WHALING, BALLANTINE and DOES 1-20, exhibited their deliberate indifference to C███████'s statutorily protected right to full and equal access to education.  Defendants deliberately ignored the protocols outlined in C███████'s IEP when responding to his autism related problem behavior and resorted instead to excessive and unreasonable force and excluding him from class.

106. On information and belief, the DISTRICT receives federal financial assistance.

107. Plaintiffs have incurred special and general damages as a result of Defendants' actions, as more particularly described above.  In addition, Plaintiffs incurred attorneys' fees and costs in bringing this action.

108. WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as set forth herein.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF CAL. GOV. C. § 11135
### (AGAINST ALL DEFENDANTS)

109.     Plaintiffs incorporate by reference Paragraphs 1 through 108, inclusive, as though set forth herein in full.

110.     Cal. Gov. Code § 11135 provides that: "No person in the State of California shall, on the basis of ... physical or mental disability, be unlawfully denied the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance from the State."

111.     As more particularly set forth herein, C███████ was unlawfully denied the benefits of the special education program at ELLEHORST on the basis of his autism related behavioral issues.

112.    Rather than offering meaningful and appropriate behavior accommodations and allowing C████ to attend school for the same amount of time as his peers, the DISTRICT discriminated against C████ on the basis of his disability by excluding him from ELLEHORST by sending him to the principal's office every day and suspending him on account of his autism related behavioral issues, refusing to follow C████'s IEP with respect to his autism related behavioral issues and subjecting him to an unsafe school environment.

113.    The conduct of DISTRICT and its employees, including WHALING, BALLANTINE and DOES 1-20, exhibited their deliberate indifference to C████'s statutorily protected right to full and equal access to education.  Defendants deliberately ignored the protocols outlined in ████'s IEP when responding to his autism related problem behavior and resorted instead to excessive and unreasonable force and excluding him from class.

114.    On information and belief, the DISTRICT receives financial assistance from the State of California.

115.    Plaintiffs are entitled to restitution for, *inter alia*, monies spent on C████'s school related expenditures while he was denied full and equal access to the educational programs at ELLEHORST.  In addition, Plaintiffs incurred attorneys' fees and costs in bringing this action.

116.    WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as set forth herein.

## EIGHTH CAUSE OF ACTION
## VIOLATION OF CALIFORNIA EDUCATION CODE SEC. 220
## (AGAINST ALL DEFENDANTS)

117. Plaintiffs incorporate by reference Paragraphs 1 through 116, inclusive, as though set forth herein in full.

118. Cal. Educ. Code section 220 provides that "No person shall be subjected to discrimination on the basis of disability, … or any other characteristic that is contained in the definition of hate crimes set forth in Section 422.55 of the Penal Code , …, in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance, or enrolls pupils who receive state student financial aid."

119. C████ was subjected to discrimination on the basis of his autism – a disability. DISTRICT employees at ELLEHORST discriminated against C████ on the basis of his

disability by excluding him from the special education program at ELLEHORST by sending

C▮▮▮▮ to the principal's office every day and suspending him on account of his autism related

behavioral issues, refusing to follow C▮▮▮▮'s IEP with respect to his autism related behavioral

issues and subjecting him to an unsafe school environment.   Defendants' conduct was severe,

pervasive, and offensive and effectively deprived C▮▮▮▮ of his right to equal access to

educational benefits and opportunities.

120. Defendants knew that C▮▮▮▮ was being discriminated on the basis of his autism.

Defendant DISTRICT knew that WHALING, BALLANTINE and DOES 1-20 used excessive and

unreasonable force upon C▮▮▮▮ during his autism related behavioral issues.  DISTRICT knew

that C▮▮▮▮ had an IEP outlining the actions to take when CARMELO exhibited autism related

problem behavior yet permitted BALLANTINE, WHALING and DOES 1-20 to ignore the protocols

contained in C▮▮▮▮'s IEP to address such behavior.

121. Rather than offering meaningful and appropriate behavior accommodations and allowing

C▮▮▮▮ to attend school for the same amount of time as his peers, the DISTRICT discriminated

against C▮▮▮▮ on the basis of his disability by excluding him from ELLEHORST by sending

him to the principal's office every day and suspending him on account of his autism related

behavioral issues, refusing to follow C▮▮▮▮'s IEP with respect to his autism related behavioral

issues and subjecting him to an unsafe school environment.

122. The conduct of DISTRICT and its employees, including WHALING, BALLANTINE

and DOES 1-20, exhibited their deliberate indifference to C▮▮▮▮'s statutorily protected right to

full and equal access to education.  Defendants deliberately ignored the protocols outlined in

C▮▮▮▮'s IEP when responding to his autism related problem behavior and resorted instead to

excessive and unreasonable force and excluding him from class.

123. On information and belief, the DISTRICT receives financial assistance from the State of

California.

124. Plaintiffs have incurred special and general damages as a result of Defendants' actions, as

more particularly described above.  In addition, Plaintiffs incurred attorneys' fees and costs in

bringing this action.

125. WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as set forth herein.

### NINTH CAUSE OF ACTION

### VIOLATION OF UNRUH ACT (CAL. CIV. C. 51)

### (AGAINST ALL DEFENDANTS)

126. Plaintiffs incorporate by reference Paragraphs 1 through 125, inclusive, as though set forth herein in full.

127. The Unruh Act, Cal. Civil C. sec. 51, provides, in relevant part, that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their … disability … are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever. Cal. Civ. C. 51.

128. A violation of the right of any individual under the Americans with Disabilities Act of 1990 shall also constitute a violation of the Unruh Act. Cal Civ Code § 51(f). As more particularly set forth herein, C▮▮▮▮ was denied full and equal access to the special education program at ELLEHORST. Plaintiffs incorporate herein by reference all the aforementioned allegations, including, but not limited to those in their ADA claim.

129. C▮▮▮▮ has a disability – autism.

130. Defendant DISTRICT is a business establishment subject to the Unruh Act. Defendant DISTRICT, acting through its employees BALLANTINE, WHALING and DOES 1-20, denied CARMELO full and equal access to the educational programs and facilities at ELLEHORST.

131. At the time of the incidents described herein, WHALING, BALLANTINE and DOES 1-20 were employed by Defendant DISTRICT and were acting within the course and scope of their employment.

132. A substantial motivating reason for Defendant's conduct was their perception of C▮▮▮▮'s disability (autism). C▮▮▮▮ was harmed by Defendants' actions, as more particularly described above.

133. Defendant DISTRICT's conduct, in permitting BALLANTINE, WHALING and DOES 1-20 to continue to apply excessive and unreasonable force upon C▮▮▮▮ in response to his

17
COMPLAINT

1   autism related behavioral issues, and ignoring C████████'s IEP with respect to the actions to take in

2   the event of C████████'s autism related problem behavior, were substantial factors in causing

3   C████████'s injuries.

4       134. Plaintiffs have incurred special and general damages as a result of Defendants' actions, as

5   more particularly described above. In addition, Plaintiffs incurred attorneys' fees and costs in

6   bringing this action.

7       135. WHEREFORE, Plaintiffs request that judgment be entered in their favor and against

8   Defendants as set forth herein.

9                           **TENTH CAUSE OF ACTION**

10                          **VIOLATION OF BANE ACT**

11                          **(AGAINST ALL DEFENDANTS)**

12      136.  Plaintiffs incorporate by reference Paragraphs 1 through 135, inclusive, as though set

13  forth herein in full.

14      137. The Bane Act provides for liability when someone, "by threat, intimidation, or coercion,"

15  interferes with "rights secured by the Constitution or laws of the United States" or those of California.

16  See Cal. Civ. Code. § 52.1.

17      138. As more particularly set forth hereinabove, Defendant DISTRICT, by and through its

18  employees, BALLANTINE, WHALING and DOES 1-20, acted violently against C████████ to

19  prevent him from accessing the special education program at ELLEHORST, a place of public

20  accommodation; namely, a public school.

21      139. Defendants' actions interfered with C████████'s right to equal access to education, as

22  secured by, *inter alia*, the ADA, Rehabilitation Act and Unruh Act.

23      140. Defendant DISTRICT, by and through the actions of its employees, BALLANTINE,

24  WHALING and DOES 1-20, intended, or acted with deliberate indifference, to deprive C████████

25  of his right to access education in a place of public accommodation; namely, a school –

26  ELLEHORST.

27      141. Defendants denied C████████ access to the special educational program at

28  ELLEHORST by, among other things, sending C████████ to the principal's office every day and

                                18

suspending him on account of his autism related behavioral issues, refusing to follow C███████'s

IEP in response to his autism related behavioral issues and subjecting him to an unsafe school

environment.

142. At the time of the incidents cited herein, BALLANTINE, WHALING and DOES 1-20

were employed by Defendant DISTRICT and were acting within the course and scope of their

employment.

143. C███████ was harmed, as more particularly described above.

144. Defendant DISTRICT knew that WHALING, BALLANTINE and DOES 1-20 used

excessive and unreasonable force upon C███████ during his autism related behavioral issues.

DISTRICT knew that C███████ had an IEP outlining the actions to take when C███████████

exhibited autism related problem behavior yet permitted BALLANTINE, WHALING and DOES 1-

20 to ignore the protocols contained in C███████'s IEP to address such behavior.

145. Defendant DISTRICT's conduct, in permitting BALLANTINE, WHALING and DOES

1-20 to continue to apply excessive and unreasonable force upon C███████ in response to his

autism related behavioral issues, and ignoring C███████'s IEP with respect to the actions to take in

the event of C███████'s autism related problem behavior, were substantial factors in causing

C███████'s injuries.

146. In performing the acts herein described, Defendant DISTRICT acted maliciously and

oppressively, in willful and conscious disregard of C███████ s rights and safety, thereby entitling

Plaintiffs to compensatory and punitive damages, a $25,000 civil penalty, attorney's fees, and

injunctive relief, as provided in Cal. Civ. Code §§ 52.1, subd. (b) and 52 and requested below

147. WHEREFORE, Plaintiffs request that judgment be entered in their favor and against

Defendants as set forth herein.

### ELEVENTH CAUSE OF ACTION

### VIOLATION OF THE RALPH ACT

### (AGAINST ALL DEFENDANTS)

148. Plaintiff incorporates by reference Paragraphs 1 through 147, inclusive, as though set

forth herein in full.

149.    The Ralph Civil Rights Act forbids acts of violence or threats of violence because of, *inter alia*, a person's actual or perceived disability. (California Civil Code section 51.7).

150.    Defendant DISTRICT, through its employees, BALLANTINE, WHALING and DOES 1-20, committed acts of violence act against C████████, as more particularly described above. At the time of the incidents, BALLANTINE, WHALING and DOES 1-20 were employed by Defendant DISTRICT and were acting within the course and scope of their employment.

151.    A substantial motivating reason for Defendants' conduct was its perception of C████████'s disability (autism).

152.    C████████ was harmed, as more particularly described above.

153.    Defendant DISTRICT, knew that BALLANTINE, WHALING and DOES 1-20 used excessive and unreasonable force upon C████████ during his autism related behavioral issues.

154.    DISTRICT knew that C████████ had an IEP outlining the actions to take when C████████ exhibited autism related problem behavior yet permitted BALLANTINE, WHALING and DOES 1-20 to ignore the protocols contained in C████████'s IEP to address such behavior.  The actions of the DISTRICT in ignoring C████████'s IEP and permitting defendants WHALING, BALLANTINE and DOES 1-20 to apply excessive and unreasonable force upon C████████ when he exhibited autism related problem behavior, was a substantial factor in causing C████████'s injuries.

155.    Defendants' violation of C████████'s rights under the Ralph Act entitles Plaintiffs to compensatory and punitive damages, a $25,000 civil penalty, attorney fees, and injunctive relief, as provided in Civ. Code § 52 and Civ. Code § 51.7 and requested below.

156.    WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays for judgment against Defendants, and each of them, according to proof, as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3. For pre-judgment and post-judgment interest on all damages awarded;

4. For costs of suit incurred, including attorneys' fees;

5. Restitution;

6. For punitive damages against Defendants BALLANTINE and WHALING; and

7. For such other and further relief as the court may deem just and proper.

Date: August 17, 2022                              **BALOGH LAW**

Jason Balogh
Attorneys for Plaintiffs Crisanthe Giannakis,
C        C        and Ernest Casados

21
**COMPLAINT**

**DEMAND FOR JURY TRIAL**

Plaintiff hereby requests a jury trial.

Date:  August 17, 2022

**BALOGH LAW**

Jason Balogh
Attorneys for Plaintiffs Crisanthe Giannakis,
C████  C█████  and Ernest Casados

22

CIV-010

| ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jason O. Balogh (SBN 238199)<br>BALOGH LAW<br>6680 Alhambra Ave., Suite 101, Martinez CA 94553<br><br>TELEPHONE NO.: 925-575-8056     FAX NO. *(Optional):*<br>E-MAIL ADDRESS *(Optional):* jason@baloghlaw.com<br>ATTORNEY FOR *(Name):* PLAINTIFFS CRISANTHE GIANNAKIS. et al. | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF CONTRA COSTA
STREET ADDRESS: 725 Court Street
MAILING ADDRESS: 725 Court Street
CITY AND ZIP CODE: Martinez 94553
BRANCH NAME: Wakefield Taylor Courthouse

PLAINTIFF/PETITIONER: Crisanthe Giannakis, C███ Casados, E█████
DEFENDANT/RESPONDENT: West Contra Costa Unified School District, et al.

| APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL<br>[ x ] EX PARTE | CASE NUMBER: C22-01733 |
|---|---|

> **NOTE: This form is for use in civil proceedings in which a party is a minor, an incapacitated person, or a person for whom a conservator has been appointed. A party who seeks the appointment of a guardian ad litem in a family law or juvenile proceeding should use form FL-935. A party who seeks the appointment of a guardian ad litem in a probate proceeding should use form DE-350/GC-100. An individual cannot act as a guardian ad litem unless he or she is represented by an attorney or is an attorney.**

1. Applicant *(name):* CRISANTHE GIANNAKIS                                    is
   a. [ x ] the parent of *(name):* C██████ C█████
   b. [  ] the guardian of *(name):*
   c. [  ] the conservator of *(name):*
   d. [  ] a party to the suit.
   e. [  ] the minor to be represented *(if the minor is 14 years of age or older).*
   f. [  ] another interested person *(specify capacity):*

2. This application seeks the appointment of the following person as guardian ad litem *(state name, address, and telephone number):*
   CRISANTHE GIANNAKIS
   c/o Jason Balogh Esq., Balogh Law, 6680 Alhambra Ave., Suite 101, Martinez CA 94553, Tel.: 925-575-8056.

3. The guardian ad litem is to represent the interests of the following person *(state name, address, and telephone number):*
   C██████ C█████
   c/o Jason Balogh Esq., Balogh Law, 6680 Alhambra Ave., Suite 101, Martinez CA 94553, Tel.: 925-575-8056.

4. The person to be represented is:
   a. [ x ] a minor *(date of birth):* JANUARY 10, 2016
   b. [  ] an incompetent person.
   c. [  ] a person for whom a conservator has been appointed.

5. The court should appoint a guardian ad litem because:
   a. [ x ] the person named in item 3 has a cause or causes of action on which suit should be brought *(describe):*
   C██████ C█████ ("Casados") requires a guardian ad litem to pursue personal injury and civil rights claims against West Contra Costa Unified School District, its employees Colleen Ballantine, Greg Whaling and others (collectively "Defendants") arising from Defendants' unreasonable use of force against C█████ while C█████ attended Defendants' Special Education Program at Ellehorst Elementary School. Defendants actions denied C█████ equal access to education on a discriminatory basis and caused C█████ physical and emotional harm.

   [  ] *Continued on Attachment 5a.*

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CIV-010 [Rev. January 1, 2008] | **APPLICATION AND ORDER FOR APPOINTMENT<br>OF GUARDIAN AD LITEM—CIVIL** | Code of Civil Procedure,<br>§ 372 et seq. |
|---|---|---|

CIV-010

| PLAINTIFF/PETITIONER: | Crisanthe Giannakis, C████ C████, Ernest Casados | CASE NUMBER: |
|---|---|---|
| DEFENDANT/RESPONDENT: | West Contra Costa Unified School District , et al . | |

5.  b. ☐ more than 10 days have elapsed since the summons in the above-entitled matter was served on the person named in item 3, and no application for the appointment of a guardian ad litem has been made by the person identified in item 3 or any other person.

c. ☐ the person named in item 3 has no guardian or conservator of his or her estate.

d. ☐ the appointment of a guardian ad litem is necessary for the following reasons *(specify):*

☐ Continued on Attachment 5d.

6.  The proposed guardian ad litem's relationship to the person he or she will be representing is:

a. ☒ related *(state relationship):* MOTHER

b. ☐ not related *(specify capacity):*

7.  The proposed guardian ad litem is fully competent and qualified to understand and protect the rights of the person he or she will represent and has no interests adverse to the interests of that person. *(If there are any issues of competency or qualification or any possible adverse interests, describe and explain why the proposed guardian should nevertheless be appointed):*
    Crisanthe Giannakis (the "Applicant") is also a plaintiff in the action brought by ████████. Applicant seeks damages against Defendants for emotional distress caused by seeing injuries on Applicant's son, C████. Applicant's claim is not adverse to C████ claims in the complaint against Defendants. Accordingly, Applicant should be appointed as C████ guardian at litem.

☐ Continued on Attachment 7.

Jason O. Balogh

_____
(TYPE OR PRINT NAME)

▶ *[signature]*
_____
(SIGNATURE OF ATTORNEY)

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: Aug 17, 2022

Crisanthe Giannakis

_____
(TYPE OR PRINT NAME)

*[signature]*
_____
(SIGNATURE OF APPLICANT)

## CONSENT TO ACT AS GUARDIAN AD LITEM

I consent to the appointment as guardian ad litem under the above petition.

Date: Aug 17, 2022

Crisanthe Giannakis

_____
(TYPE OR PRINT NAME)

*[signature]* Crisanthe Giannakis (Aug 17, 2022 23:01 PDT)
_____
(SIGNATURE OF PROPOSED GUARDIAN AD LITEM)

## ORDER  ☒ EX PARTE

THE COURT FINDS that it is reasonable and necessary to appoint a guardian ad litem for the person named in item 3 of the application, as requested.

THE COURT ORDERS that *(name):*  CRISANTHE GIANNAKIS

is hereby appointed as the guardian ad litem for *(name):*  C████ C████

for the reasons set forth in item 5 of the application.

Date:

_____
JUDICIAL OFFICER

☐ SIGNATURE FOLLOWS LAST ATTACHMENT

CIV-010 [Rev. January 1, 2008]

**APPLICATION AND ORDER FOR APPOINTMENT OF GUARDIAN AD LITEM—CIVIL**

Page 2 of 2

For your protection and privacy, please press the Clear This Form button after you have printed the form.

[ Print this form ] [ Save this form ]   [ Clear this form ]